J-A03042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD HARVEY FOSTER | : | |
| | : | |
| Appellant | : | No. 368 WDA 2023 |

Appeal from the PCRA Order Entered December 16, 2021
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0002368-2016

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: March 19, 2024**

Ronald Harvey Foster (Appellant) appeals *nunc pro tunc* from the order

dismissing his first petition under the Post Conviction Relief Act (PCRA).[1]  We

affirm.

This Court previously summarized the underlying facts:

> This case arises from a drug deal gone bad.  Many of the
> facts are undisputed.  On several occasions, Appellant sought to
> purchase marijuana from Dane Mathesius, one of the two murder
> victims.  When Mathesius appeared at an abandoned building to
> consummate the transaction, Appellant, Lawrence Reddick,
> Deontae Jones, and Rasheid Hicks were waiting.  Present with
> Mathesius was sixteen-year-old William Booher and thirteen-year-
> old N.R.
>
> Mathesius stopped his car, and Reddick climbed into the rear
> passenger seat.  Reddick brandished a firearm and directed
> Mathesius to pull over.  Reddick then robbed Mathesius, Booher,

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

and N.R. At the conclusion of the robbery, Reddick fatally shot both Mathesius and Booher.

The primary issue at trial was Appellant's awareness of Reddick's intent to rob Mathesius. Appellant admitted he set up the drug deal. He also admitted he agreed to have Reddick accomplish the transaction, as Appellant feared that Booher intended to rob Appellant.

In contrast, the Commonwealth presented testimony that Appellant planned the robbery with Reddick. Hicks testified that he heard Appellant plan the robbery with Reddick the night before it occurred. Xavier Fisher also testified to Appellant's involvement in planning the robbery the night before. Jones testified that Appellant had informed him of his intent to rob Mathesius a week prior to the robbery.

*Commonwealth v. Foster*, 221 A.3d 1239, 505 WDA 2018 (Pa. Super. 2019) (unpublished memorandum at 1).

On November 14, 2016, the Commonwealth filed an information charging Appellant with two counts of criminal homicide, three counts of robbery, and one count each of conspiracy to commit robbery and criminal use of a communication facility.[2]

Appellant was represented by Paul Gettleman, Esquire (trial counsel). On January 13, 2017, Appellant, who was 17 years old at the time of the alleged offenses, filed a petition to transfer his case to juvenile court (decertification petition). The defense retained Dr. Nancy Kunsak, a licensed psychologist, "to assess [Appellant's] mental status at the time of the shooting." Supplement to PCRA Petition, 5/17/21, Exhibit A (Kunsak Report)

---

[2] 18 Pa.C.S.A. §§ 2501(a), 3701(a)(1)(i) and (ii), 903(a)(1), 7512(a).

at 2. On March 16, 2017, Dr. Kunsak submitted a seven-page report in which she diagnosed Appellant with "Attention Deficit Disorder with Hyperactivity, Combined Type" (ADHD). *Id.* at 6. Dr. Kunsak concluded Appellant was unable "to anticipate the outcome of a sequence of events or his own choices," and "was fully influenced by faulty reasoning and shortsightedness" when he involved himself in the alleged offenses. *Id.* at 7. Dr. Kunsak stated Appellant "expresses appropriate remorse and regret," but opined it was "doubtful that [Appellant] understands the role his involvement had in the deaths that occurred." *Id.*

On June 16, 2017, Appellant filed a motion to withdraw the decertification petition. That same day, Appellant (who was 18 years old by that time) underwent an extensive colloquy regarding his decision to withdraw his decertification petition. *See* N.T., 6/16/17, at 3-19. The trial court granted the motion to withdraw, finding Appellant's decision was knowing, intelligent, and voluntary. *See* PCRA Court Opinion, 12/16/21, at 22.

On September 5, 2017, a jury convicted Appellant of two counts of third-degree murder,[3] three counts of robbery, and one count each of conspiracy to commit robbery and criminal use of a communication facility.

The trial court scheduled sentencing, ordered a presentence investigation report, and directed that Appellant undergo a mental health

---

[3] 18 Pa.C.S.A. § 2502(b).

evaluation and a drug and alcohol evaluation. Trial Court Order, 9/5/17. At the October 17, 2017, sentencing hearing, trial counsel presented testimony from six witnesses, including Appellant and his mother. **See** N.T., 10/17/17, at 21-43. The trial court imposed an aggregate sentence of 34 to 70 years in prison.

Represented by new, court-appointed counsel (appellate counsel), Appellant filed a post-sentence motion. The trial court denied the motion, and Appellant timely appealed. On September 9, 2019, this Court affirmed Appellant's judgment of sentence. **See Foster**, 221 A.3d 1239 (unpublished memorandum at 13). On June 16, 2020, the Pennsylvania Supreme Court denied allowance of appeal. **See Commonwealth v. Foster**, 236 A.3d 1038 (Pa. 2020).

On April 27, 2021, represented by new counsel (PCRA counsel), Appellant filed the instant, timely PCRA petition. The petition alleged, *inter alia*, trial counsel's ineffectiveness for advising Appellant to withdraw the decertification petition and for failing to present certain mitigating evidence at sentencing. PCRA Petition, 4/27/21, at 5-6. The petition also alleged appellate counsel's ineffectiveness for failing to preserve these claims in a post-sentence motion or on appeal. *Id.* at 6-7, 9-11.

On October 15, 2021, the PCRA court held an evidentiary hearing. Trial counsel testified that he believed "the facts [relating to the petition] for decertification were horrendous" and the chances of the trial court granting

decertification were "remote." N.T., 10/15/21, at 17. Trial counsel testified that he discussed with Appellant and Appellant's mother the prospects of going forward with the decertification petition, "and ultimately we all decided that we should just go to trial." *Id.*

Dr. Kunsak testified that she discussed with trial counsel "how difficult it would be to build a case for [Appellant] to be tried as [a juvenile] as opposed to an adult." *Id.* at 155. Dr. Kunsak testified that trial counsel indicated he did not anticipate Dr. Kunsak having to testify at a decertification hearing, as trial counsel believed that decertification "was going to be a fruitless pursuit." *Id.* at 155, 172. Dr. Kunsak also testified that trial counsel never contacted her about testifying at Appellant's sentencing hearing. *Id.* at 156.

On December 16, 2021, the PCRA court denied Appellant's PCRA petition. PCRA Court Order and Opinion, 12/16/21.

No timely appeal followed. The PCRA court appointed new counsel (PCRA appellate counsel) and, on November 1, 2022, Appellant filed a petition to reinstate his appeal rights, *nunc pro tunc*. On March 2, 2023, the PCRA court granted the petition and reinstated Appellant's PCRA appeal rights, *nunc pro tunc*. On March 31, 2023, Appellant filed a notice of appeal. The PCRA court did not direct Appellant to file a concise statement of matters complained of on appeal, but filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents two issues for our review:[4]

> 1.    [Did the PCRA court err] by finding that neither trial counsel nor appellate counsel was ineffective for failing to adequately advise [Appellant] concerning the withdrawal of the decertification petition … [and] for failing to raise this claim [on appeal?]

> 2.    [Did the PCRA court err] by finding that neither trial counsel nor appellate counsel was ineffective for failing to present mitigation evidence at the time of sentencing … [and] for failing to raise this claim [on appeal?]

Appellant's Brief at 9.

"We review the denial of PCRA relief by examining whether the PCRA court's conclusions are supported by the record and free from legal error." *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023) (citing *Commonwealth v. Housman*, 226 A.3d 1249, 1260 (Pa. 2020)). The scope of our review is "limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Commonwealth v. Hanible*, 30 A.3d 426, 438 (Pa. 2011) (citation omitted).

Appellant claims ineffective assistance of counsel. "[W]e begin, as we must, with the presumption that counsel acted effectively." *Johnson*, 289 A.3d at 979 (citing *Commonwealth v. Robinson*, 82 A.3d 998, 1005 (Pa. 2013)); *see also Commonwealth v. Lesko*, 15 A.3d 345, 380 (Pa. 2011) ("When evaluating ineffectiveness claims, judicial scrutiny of

---

[4] Appellant's brief identifies a third issue, but his counsel withdrew the claim, stating it lacks merit. *See* Appellant's Brief at 9, 13, 31-33.

counsel's performance must be highly deferential." (citation and quotation marks omitted)).

>A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)).

To establish a claim of ineffectiveness, a PCRA petitioner must plead and prove:

>(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011) (employing the ineffective assistance of counsel test from ***Commonwealth v. Pierce***, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the ***Pierce*** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (citations modified).

In his first issue, Appellant asserts trial counsel was ineffective for failing to advise Appellant not to withdraw the decertification petition, and appellate

counsel was ineffective for failing to raise this claim on appeal. *See* Appellant's Brief at 14-20.

We begin by considering whether the decertification petition has arguable merit. We have explained that

> a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation modified; brackets omitted).

The Juvenile Act provides that, except in the case of the most serious crimes,

> if it appears to the court in a criminal proceeding that the defendant is a child … the court shall forthwith halt further criminal proceedings, and, where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile hearings.

42 Pa.C.S.A. § 6322(a). However, "[i]n determining whether to transfer a case charging murder or any of the offenses excluded from the definition of 'delinquent act' in [42 Pa.C.S.A. §] 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest." *Id.*; *see also K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa. Super. 2019) ("A preponderance of the evidence standard is defined as the greater

- 8 -

weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." (citation omitted)).

Because Appellant was charged with murder, he was not entitled to a transfer to juvenile court as a matter of right. **Id.** To prevail on his decertification petition, Appellant had the burden of establishing that the transfer would serve the public interest. **Id.**

"The decision whether to grant an application for transfer to the Juvenile Court of a minor charged with murder is within the sound discretion of the hearing judge." **Commonwealth v. Austin**, 664 A.2d 597, 598 (Pa. Super. 1995) (citation omitted). "An abuse of discretion which will warrant reversal of the trial court's decision to retain a murder case in the Criminal Division may not merely be an error of judgment, but must be a misapplication of the law or an exercise of manifestly unreasonable judgment based upon partiality, prejudice or ill will." **Id.** at 599 (citation omitted).

"In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in [42 Pa.C.S.A. §] 6355(a)(4)(iii)…." 42 Pa.C.S.A. § 6322(a); **accord Commonwealth v. Green**, 291 A.3d 317, 318 n.1 (Pa. 2022). Section 6355(a)(4)(iii) provides that transfer is warranted only if the trial court finds

> that there are reasonable grounds to believe that the public interest is served by the transfer of the case…. In determining whether the public interest can be served, the court shall consider the following factors:
>
> > (A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;[5]

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors….

42 Pa.C.S.A. § 6355(a)(4)(iii) (footnote added).

_____

[5] Juvenile court jurisdiction expires when a delinquent child "attains 21 years of age." 42 Pa.C.S.A. § 6352(a)(5).

- 10 -

"[F]or purposes of analyzing the factors in [Section] 6355(a)(4)(iii), **a trial court may (but need not) assume that the juvenile is guilty and committed the alleged acts constituting the offense**." *Commonwealth v. Brown*, 26 A.3d 485, 508 (Pa. Super. 2011) (emphasis added).

Appellant asserts trial counsel never properly assessed whether the Section 6355(a)(4)(iii) factors could have been established in Appellant's favor. Appellant's Brief at 16. However, Appellant fails to demonstrate that the factors could have been established even if trial counsel had acted differently.

Appellant's PCRA petition alleged trial counsel should have pursued the decertification petition because he "possessed a promising expert report" from Dr. Kunsak. PCRA Petition, 4/27/21, at 23-24, 27. On appeal, however, Appellant concedes that, at the PCRA evidentiary hearing, "Dr. Kunsak testified that she never assessed [Appellant] concerning the 42 Pa.C.S.A. § 6355(a)(4)(iii) factors." Appellant's Brief at 17; *see* N.T., 10/15/21, at 195 (Dr. Kunsak admitting she is "not aware of what the factors are."). The PCRA court determined Dr. Kunsak's report did not support decertification, in part because it relied on Appellant's self-serving denial of culpability for the underlying offenses. *See* PCRA Court Opinion, 12/16/21, at 26-28; *see also id.* at 26 (quoting the holding of *Brown*, *supra*, that a trial court considering decertification may assume the juvenile is guilty).

Appellant now argues that because Dr. Kunsak's report did not support decertification, trial counsel was ineffective for not obtaining some other report. *See* Appellant's Brief at 17-18. However, whether a more favorable report could have been obtained remains mere conjecture. Appellant had the opportunity to substantiate his claim at the PCRA evidentiary hearing, where he was required to prove facts establishing the merit of his underlying decertification petition. *See Commonwealth v. Fisher*, 813 A.2d 761, 771 (Pa. 2002) (ineffectiveness claim rejected where petitioner "did not present anything at the PCRA evidentiary hearing which would have produced a different result [on the underlying issue]…. Counsel cannot be faulted for failing to discover or present evidence if [petitioner] fails to meet the burden of establishing that the evidence exists.").

The PCRA court analyzed the Section 6355(a)(4)(iii) factors and concluded Appellant's decertification petition lacked merit:

> The crimes [charged against Appellant], robbery and criminal homicide, had the most serious impact imaginable on the victims. The impact on their families and the communities cannot be overestimated. [Appellant's] threat to the public safety, as the person who planned the robbery, is great. The nature of the circumstances, ambush and armed robbery of three unsuspecting juveniles, including a thirteen year old boy, at a drug deal set up by [Appellant], is of the most serious character. Although [Appellant] was not the actual shooter, the testimony demonstrated his planning role in the scheme, and his efforts to conceal evidence after the fact, and therefore his high level of culpability. The alternatives available in the juvenile system would clearly have been inadequate to address [Appellant's] needs….

- 12 -

The [PCRA c]ourt does not believe that [Appellant] would have been amenable to treatment, supervision, or rehabilitation as a juvenile. He was nearly eighteen years old at the time of the offense. Although he was diagnosed with "Attention-Deficit/Hyperactivity Disorder, combined presentation[,]" and had abused marijuana, he was of average intelligence, able to manage his school work, and performed well in football. His criminal sophistication was demonstrably high, although his prior record was not substantial. The [PCRA c]ourt does not believe [Appellant] could have been rehabilitated for such serious crimes in the short time that would have been available before the juvenile court's jurisdiction expired.

The [PCRA c]ourt finds that [Appellant] has failed to present evidence that would prove that [Appellant's] decertification would have served the public interest. Rather, the [PCRA c]ourt finds that [Appellant's] decertification would have demeaned the seriousness of his crimes. [Appellant] therefore fails to prove … arguable merit…. Because his claim has no arguable merit[,] … [Appellant's] counsel was not ineffective.

PCRA Court Opinion, 12/16/21, at 26, 28-29.

The record supports the PCRA court's analysis. We agree that Appellant's underlying claim lacks arguable merit and, therefore, his first ineffectiveness claim against trial counsel fails.

Regarding the alleged ineffective assistance of appellate counsel, we observe the following. "Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." *Commonwealth v. Parrish*, 273 A.3d 989, 1003 n.11 (Pa. 2022). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective,

then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010). Here, we concluded trial counsel was not ineffective. Accordingly, Appellant's claim of ineffective assistance of appellate counsel, premised on trial counsel's ineffectiveness, fails. *See id.*

In his second issue, Appellant asserts trial counsel was ineffective for failing to present certain mitigating evidence at sentencing, and appellate counsel was ineffective for failing to raise this claim on appeal. *See* Appellant's Brief at 21-30. Appellant notes trial counsel presented testimony from six character witnesses during the sentencing hearing, but asserts "there was no mention of [Appellant's] mental health diagnosis and how it affected him." *Id.* at 24. Rather, Appellant argues, trial counsel only presented witnesses who testified Appellant "was a good kid" and asked for leniency. *Id.* Appellant maintains trial counsel should have called Dr. Kunsak and Dr. Daniel Graff to testify at the sentencing hearing. *Id.* at 27-28. Their testimony, Appellant asserts, would have explained his medical diagnosis, his "lack of decision-making capabilities," and his potential for rehabilitation. *Id.* at 24-27. Appellant further argues trial counsel should have asked Appellant's mother, who did testify at sentencing, to testify regarding Appellant's medical history and diagnosis. *Id.* at 24-26. We will separately address Appellant's claim as to each proposed witness.

To prove trial counsel was ineffective for failing to call a witness, a PCRA petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Brown*, 196 A.3d 130, 167 (Pa. 2018) (citation omitted).

At the PCRA evidentiary hearing, Dr. Kunsak testified that she was available and willing to testify at Appellant's sentencing hearing. N.T., 10/15/21, at 156. Trial counsel acknowledged he knew of Dr. Kunsak's existence. *Id.* at 25-26. We may therefore consider whether the absence of her testimony prejudiced Appellant.

The PCRA court reviewed Dr. Kunsak's report and specifically found that it did not have "high mitigating value[.]" PCRA Court Opinion, 12/16/21, at 8. The PCRA court stated:

> At best, [the report] is largely conclusory, providing few examples to support the statements it makes. At worst, it is contradicted by the voluminous evidence that was received at trial, and even makes statements that could well be construed as aggravating. For example, it states that [Appellant] has "not learn[ed] from past disciplinary measures to modify his behavior" despite the fact that "[h]e often was punished for the outcome of his behavioral choices…." Thus, the report indicates that [Appellant] has a history of refusing to behave in an acceptable way despite repeated attempts at correction. Further, the report states, "[Appellant] often does not see how he is responsible for bad choices when they are a product, in part, of someone else's influences." It would appear the report may be suggesting that [Appellant], rather than displaying genuine remorse, instead shifts the blame for [his] actions to others. Next, the report states

- 15 -

that "many individuals like [Appellant] have problems with authority because those in charge—parents, teachers, employers, coaches—can see what he cannot see." Thus, the report further reinforces the view that [Appellant] has refused to conform his conduct to the reasonable expectations of everyday authorities because he sees things differently. Nevertheless, the report agrees that [Appellant] is of average intelligence, that he has the ability to complete his class work, and that he benefited emotionally and behaviorally from … play[ing] on the Aliquippa football team.

*Id.* at 8-9.

Moreover, the PCRA court made clear that it was aware of Appellant's ADHD diagnosis at the sentencing hearing:[6]

It appears to the [PCRA c]ourt that the serious mental health condition that [Appellant] claims he had that the [PCRA c]ourt failed to consider was … ADHD[]. The transcript of the sentencing hearing plainly shows that the [PCRA c]ourt reviewed with counsel the reports and evaluations that had been prepared prior to sentencing, including the pre-sentence report, a mental health evaluation, a drug and alcohol evaluation, and the sentencing guidelines. N.T., 10/17/17, at 4-7. The pre-sentence report stated that [Appellant] had been diagnosed with ADHD. Thus, the [PCRA c]ourt was already aware of the diagnosis.

PCRA Court Opinion, 12/16/21, at 8.[7]

The PCRA court concluded,

to the extent there is any mitigating value to [Dr. Kunsak's] letter, report, and testimony, the [PCRA c]ourt cannot say that they provide any substantive information that was not already captured

_____

[6] The same judge presided over Appellant's trial, sentencing, and PCRA petition.

[7] Where the trial court has the benefit of a presentence investigation report, "we can assume [it] was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010).

- 16 -

by the pre-sentence report, mental health evaluation, and drug and alcohol evaluation, or the evidence presented at trial…. The [PCRA c]ourt therefore finds that [Appellant] failed to prove that he was prejudiced by trial counsel's failure to present this evidence at sentencing.

*Id.* at 10.

The record supports the PCRA court's analysis. We agree that Appellant failed to demonstrate he was prejudiced by the absence of Dr. Kunsak's testimony.

Appellant next argues trial counsel was ineffective for failing to call Dr. Daniel Graff to testify at sentencing. Appellant's Brief at 27-28. Appellant claims Dr. Graff was Appellant's pediatrician and "would have appeared for testimony concerning [Appellant's] medical records." *Id.* at 28. Though Appellant's brief asserts Dr. Graff "is still an active pediatrician in Beaver County," Appellant cites to nothing in the record establishing Dr. Graff's availability and willingness to testify on Appellant's behalf. *Id.* at 27. Our review discloses Dr. Graff did not testify at the PCRA evidentiary hearing and Appellant's brief fails to specify the expected substance of his testimony. *See Commonwealth v. Selenski*, 228 A.3d 8, 17 (Pa. Super. 2020) (rejecting an ineffectiveness claim for failure to call a witness where the proposed witness did not testify at PCRA evidentiary hearing and petitioner did not demonstrate how the witness's testimony would have been helpful). Accordingly, Appellant's claim regarding Dr. Graff fails.

Finally, Appellant asserts trial counsel rendered ineffective assistance by not eliciting testimony from Appellant's mother regarding Appellant's medical history. Appellant's Brief at 26. Appellant argues his mother "would have testified regarding the day-to-day impact of [Appellant's] mental health diagnosis…." ***Id.*** However, Appellant's brief fails to specify the expected substance of this testimony, and Appellant's mother did not testify at the PCRA evidentiary hearing. ***See Selenski***, 228 A.3d at 17. As such, Appellant failed to establish prejudice resulting from the absence of this testimony.

Because Appellant failed to plead and prove trial counsel's ineffectiveness for failing to present mitigating evidence at sentencing, his claim of appellate counsel's ineffectiveness for failing to raise this issue lacks merit. ***Burkett***, 5 A.3d at 1270.

For the above reasons, neither of Appellant's issues merit relief.

Order affirmed.

Judge Bowes joins the memorandum.

Judge Kunselman did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/19/2024